**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RAYMOND SERIO, #B-70625,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-00763-SMY** |
| | ) | |
| **PAM WESTERMAN,** | ) | |
| **KIMBERLY C. BUTLER,** | ) | |
| **C/O MULLHOLLAND,** | ) | |
| **and UNKNOWN PARTY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Raymond Serio, an inmate who is currently incarcerated at Pontiac Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 against four officials at Menard Correctional Center. In the Complaint (Doc. 1), Plaintiff claims that these officials retaliated against him for filing grievances by denying him access to his personal property, including his legal materials, and subjecting him to cruel and unusual punishment (Doc. 1, pp. 1-31). Plaintiff now sues the following Menard officials for violating his federal rights under the First, Eighth and Fourteenth Amendments, as well as Illinois state law: Warden Kimberly Butler, C/O Westerman, C/O Mullholland and C/O John Doe (unknown correctional officer). Plaintiff seeks declaratory judgment, monetary damages and injunctive relief (*id*. at 12, 31-33).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court is required to promptly screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim

upon which relief may be granted or asks for money damages from a defendant who by law is immune from such relief.  28 U.S.C. § 1915A(b).  The Complaint survives preliminary review under this standard.

## The Complaint

Plaintiff transferred from Stateville Correctional Center ("Stateville") to Menard Correctional Center ("Menard") on October 15, 2014 (Doc. 1, p. 5).  Prior to his transfer, an inventory was taken of Plaintiff's personal property.  All of his possessions were listed on an offender personal property sheet.

For the first two weeks after his transfer to Menard, Plaintiff was denied access to his personal property boxes.[1]  On October 28, 2014, he received two property boxes.  However, he was not provided with a copy of the personal property inventory that was created at Stateville (*id*.).  Plaintiff claims that the following items were missing: (1) 1 RCA flat screen television; (2) 1 pair of Koss C-L 20 headphones; (3) 12 bottles of acrylic paint; (4) 40 paintbrushes; (5) 1 - 18" x 24" pad of water color paper; (6) 40 colored pens; (7) 50 colored pencils; (8) 25 markers; (9) miscellaneous family photos; (10) 1 ruler; (11) 2 Gun Digest books; (12) 1 lamp with bulb; (13) 1 clip-on book light; (14) sweatpants; (15) gym shorts; (16) sweatshirt; (17) tattoo books; (18) 5 crewneck t-shirts; (19) 1 pad of tracing paper; (20) JVC ear buds; (21) 2 blue bed sheets; (22) 2 blue pillow cases; (23) 2 hairbrushes; (24) 1 thermal top; (25) 1 thermal bottom; (26) 2 towels; (27) 1 West Bend fan; (28) 1 pair of Nike gym shoes; (29) 1 waterproof folder; and (30) 1 bowl (*id*. at 6).

---

[1] Plaintiff explains that he was initially placed on a "security hold" and housed in Menard's health care unit because he arrived at the facility with a "walking crutch" (*id*. at 5).

On October 29, 2014, Plaintiff wrote grievances to Counselor Rowold[2] and Warden Butler to complain about his missing property (*id*. at 7). Counselor Rowold assured Plaintiff that she would "look into the matter" (*id*.). While he awaited the counselor's response, Plaintiff continued writing grievances, including emergency grievances, to Warden Butler. He "begged" the warden to intervene (*id*.).

On November 11, 2014, Plaintiff was escorted to the personal property office, where he met with an unknown correctional officer, who is referred to herein as "C/O John Doe" (*id*. at 8). C/O Doe told Plaintiff that he had become a "pain in [the] ass" (*id*.). The correctional officer then pulled out a list of Plaintiff's missing personal property and a grievance Plaintiff addressed to the warden. As he reviewed the list, C/O Doe told Plaintiff why he could not have each of the items listed (*id*. at 9).

C/O Doe denied having a box of Plaintiff's legal materials, but he ordered an inmate worker to retrieve Plaintiff's other personal property (*id*.). The inmate worker returned with three clear plastic bags of property as well as an unsealed cardboard box (*id*. at 10). The box contained privileged legal materials. C/O Doe asked Plaintiff if this was the "shit [he had] been crying about" (*id*.). Plaintiff confirmed that it was. He was then given an opportunity to sort through the box and take legal materials that he needed in his cell. After Plaintiff finished sorting through the box, C/O Doe failed to seal it (*id*. at 11).

C/O Doe then refused to turn over several items of confiscated personal property to Plaintiff, including his headphones, paintbrushes and paints (*id*. at 12-13). When Plaintiff

---

[2] Counselor Rowold was not named as a defendant in this action, and Plaintiff does not state any claim against this individual. When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

threatened C/O Doe with litigation over the issue, C/O Doe said, "[Y]ou want to act like a lawyer.  I'm going to burn you[.]  [Y]ou're not going to get shit.  You already fucked up and filed a grievance on us and keep complaining to the warden.  I promise its [sic] over[.]  [Y]ou will never see any of this shit again[.]  [Y]ou have my word" (*id*. at 14).  At that, Plaintiff was escorted back to his cell.  He continued to complain about his missing property in grievances that he addressed to the assistant warden and Warden Butler, to no avail.

On January 24, 2015, Plaintiff asked a lieutenant to send his television to the vocational school for repair.  C/O Westerman visited Plaintiff's cell to discuss the matter.  She walked right up to the bars and said, "[W]ho the fuck do you think you are?" (*id*.).  When Plaintiff asked C/O Westerman what she was talking about, she told him to "stop writing my officers up in personal property" (*id*. at 15).  She too promised Plaintiff that he would never see his property again.  In addition, C/O Westerman told Plaintiff that she would make his life a "living hell" (*id*.).

On June 4, 2015, three correctional officers (*i.e.*, Hanks, Mullholland and an unknown officer[3]) approached Plaintiff's cell and pounded on the window (*id*. at 16).  Plaintiff and his cellmate were instructed to cuff up.  When Plaintiff showed the officers his medical permit for a double cuff due to a "really messed up shoulder," C/O Mullholland said, "I don't care about this[.]  [T]urn around and cuff up" (*id*.).  C/O Mullholland then cuffed both of Plaintiff's wrists behind his back.  He "jerked" Plaintiff by his cuffs and slammed his head twice "off the wall" (*id*. at 16-17).  When Plaintiff became dizzy and staggered, C/O Mullholland smashed his face against the wall again and again.  As he did so, the officer said, "[Y]ou want to fuck with my family, . . . [h]uh, you want to fuck with my people you fuck? [L]isten to me, this is Menard I

---

[3] C/O Hanks and the unknown officer are not named as defendants in this action, and any claims against them are considered dismissed without prejudice. *See Myles*, 416 F.3d at 551-52.

can do whatever I want to you, believe me you can die in this cellhouse.  Keep fucking with my family and see what happens to you" (*id*. at 17).  The unknown correctional officer then strip searched Plaintiff and his cellmate.  For weeks after this incident, Plaintiff suffered from excruciating pain in his head, right shoulder and neck (*id*. at 19).  The Complaint is silent about the medical care he requested or received for these alleged injuries.

When Plaintiff returned to his cell, he found his property scattered everywhere while his cellmate's property was "hardly touched" (*id*. at 18).  Family photos of deceased family members were shredded and floating in the toilet.  Legal papers were also torn up and other property was smashed.  Several affidavits that Plaintiff obtained from fellow inmates after the January incident involving C/O Westerman were missing from his legal property.  Plaintiff later learned that C/O Westerman is related to C/O Mullholland (*id*.).

Plaintiff realized that "his life was sincerely at risk" (*id*. at 19).  He had heard stories over the years about other inmates being beaten to death by officers at Menard.  In "complete terror," Plaintiff was unable to sleep, eat or perform basic tasks (*id*.).  He was overwhelmed by anxiety, fear and depression.  In November or December, an officer[4] who worked in the television repair shop asked Plaintiff to "turn[ ] over" his television for repairs and, when Plaintiff refused, simply told Plaintiff that the television was no longer his (*id*. at 20).

Plaintiff transferred to Pontiac Correctional Center ("Pontiac") on December 30, 2015 (*id*.).  He received his legal boxes from Menard's storage on January 17, 2016.  Instead of the sealed boxes, Plaintiff received a paper bag containing some of the documents that he stored in the legal boxes (*id*. at 21).  Missing from the collection were privileged legal documents and evidence that he intended to use in state court to challenge his criminal conviction.  He could no

---

[4] This officer is also not named as a defendant in the caption of the complaint or in the list of defendants. All claims against this individual are therefore considered dismissed without prejudice. *See Myles*, 416 F.3d at 551-52.

longer find affidavits from affiants who had since died. Also missing were three civil rights Complaints that he prepared with the assistance of a jailhouse lawyer for filing against officials in the Illinois Department of Corrections (*id.*).

Plaintiff now brings claims against Warden Butler, C/O Doe, C/O Westerman and C/O Mullholland for violations of his federal rights under the First, Eighth and Fourteenth Amendments, as well as his rights under Illinois state law. He seeks declaratory judgment, monetary damages and injunctive relief (*id.* at 31-33).

## Merits Review Under 28 U.S.C. § 1915A

Based on the allegations, the Court finds it convenient to divide the *pro se* Complaint into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

Count 1:    **On or around November 11, 2014, Defendant Doe retaliated against Plaintiff for filing grievances to complain about missing property by denying Plaintiff access to his personal property and improperly storing his legal materials in violation of the First and Fourteenth Amendments (*id.* at 22-24).**

Count 2:    **On January 24, 2015, Defendant Westerman retaliated against Plaintiff for filing grievances to complain about missing property by threatening to withhold his property from him and to make his life a "living hell" in violation of the First and Fourteenth Amendments (*id.* at 24-25).**

Count 3:    **On June 4, 2015, Defendant Mullholland retaliated against Plaintiff for filing grievances to complain about his missing property by using excessive force against him and confiscating or destroying his personal property during a cell shakedown in violation of the First, Eighth and Fourteenth Amendments (*id.* at 24-25).**

Count 4:    **Defendant Butler failed to adequately train and/or supervise Defendants Doe, Mullholland and Westerman and also turned**

a blind eye to their misconduct in violation of the First, Eighth and Fourteenth Amendments (*id*. at 26-27).

**Count 5:**     Defendants conspired to violate Plaintiff's constitutional rights in an effort to protect one another from liability (*id*. at 29-30).

**Count 6:**     Illinois state law claim for replevin under 735 ILCS § 5/19-101, *et seq*., against Defendants Doe and Butler (*id*. at 28).

**Count 7:**     Illinois battery claim against Defendant Mullholland (*id*. at 28-29).

**Count 8:**     Illinois state law claim for intentional infliction of emotional distress against all of the defendants (*id*. at 30-31).

As discussed in more detail below, the Eighth Amendment excessive force claim against Defendant Mullholland in **Count 3** is subject to further review, along with the state law claims for battery in **Count 7** and intentional infliction of emotional distress in **Count 8**. However, all other claims are subject to dismissal and Plaintiff's request for injunctive relief is subject to denial.

## Claims Subject to Further Review

### A.     Excessive Force (Count 3)

The Complaint articulates an Eighth Amendment excessive force claim against Defendant Mullholland. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). To state an excessive force claim, an inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).

The allegations in the Complaint suggest that Defendant Mullholland may have engaged in the malicious and sadistic use of excessive force against Plaintiff at Menard on June 4, 2015.

Allegedly and without provocation, this defendant cuffed Plaintiff behind his back (despite the fact that Plaintiff showed him a front cuff permit) and repeatedly slammed Plaintiff's head into a wall while threatening him.  Given these allegations, the excessive force claim against Defendant Mullholland in **Count 3** is subject to further review.  However, this claim shall be dismissed with prejudice against all other defendants.

**B.      State Law Claims (Counts 7 and 8)**

Where a district court has original jurisdiction over a civil action such as a Section 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims.  *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient."  *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)).

Here, the Court has original jurisdiction over Plaintiff's Section 1983 action.  Because the tort claims and federal claims arise from the same facts, the district court also has supplemental jurisdiction over Plaintiff's related state law claims for battery (Count 7) and intentional infliction of emotional distress (Count 8).  Each of these state tort claims is discussed below.

**1.      Battery (Count 7)**

Under Illinois state law, "[a] battery occurs when one 'intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual.'"  *Smith v. City of*

*Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)). The Complaint addresses each element of this claim against Defendant Mullholland. Accordingly, **Count 7** against Defendant Mullholland warrants further review.  However, the claim is subject to dismissal against all other defendants with prejudice because they are not named in connection with the incident that occurred on June 4, 2015.

##### 2. Intentional Infliction of Emotional Distress (Count 8)

The Court also cannot dismiss the intentional infliction of emotional distress claim against Defendant Mullholland.  Under Illinois law, a plaintiff claiming intentional infliction of emotional distress must demonstrate that the defendant(s) intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *see Lopez v. City of Chi.*, 464 F.3d 711, 720 (7th Cir. 2006).  The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993)).

The allegations in the Complaint satisfy these requirements for screening purposes.  At this early stage, the Court will allow Plaintiff to proceed with **Count 8** against Defendant Mullholland.  However, this claim shall be dismissed with prejudice against all other defendants,

none of whom are named in connection with the incident that occurred on June 4, 2015.

## Claims Subject to Dismissal

**A.    Retaliation (Counts 1, 2 and 3)**

The Complaint supports no claim of retaliation against Defendants Doe (Count 1), Westerman (Count 2) or Mullholland (Count 3), even at this early stage.  To state a retaliation claim under the First Amendment, the allegations in the Complaint must at least suggest that: (1) Plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity caused the deprivation.  *Harris v. Walls*, 604 F. App'x 518, 521 (7th Cir. 2015) (citing *Watkins v. Kasper*, 599 F.3d 791, 794 (7th Cir. 2010); *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). Plaintiff must allege a "chronology of events from which retaliation can be inferred," and show that retaliation was the motivating factor for the actions.  *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994); *Mount Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977).

Plaintiff alleges that the act of filing a grievance(s) on or around October 29, 2014 triggered the retaliation by Defendant Doe on November 11, 2014 (Count 1), by Defendant Westerman on January 24, 2015 (Count 2), and by Defendant Mullholland on June 4, 2015 (Count 3).   Filing a non-frivolous, truthful grievance is protected activity under the First Amendment.  *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Because the allegations in the Complaint suggest that Plaintiff may have engaged in protected First Amendment activity when he filed grievance(s) to complain about missing personal property, the first component of this claim is satisfied for screening purposes.

The question then becomes whether Plaintiff suffered a deprivation that likely deters future First Amendment activity and, if so, whether the protected conduct triggered the deprivation.  The allegations suggest that Plaintiff suffered two deprivations—a denial of access to his personal property and a denial of access to the courts.  As discussed in more detail below, neither the denial of Plaintiff's access to his personal property nor his legal materials is of constitutional magnitude in this case, but this does not doom Plaintiff's claim for retaliation.  Actions taken against a prisoner in retaliation for exercising a constitutional right may state a claim under § 1983, even if the retaliatory act itself does not violate a constitutional right.  *Matzker v. Herr*, 748 F.2d 1142, 1151-52 (7th Cir. 1984), *abrogated on other grounds by*, *Salazar v. Chicago*, 940 F.2d 233, 240-41 (7th Cir. 1991).  For screening purposes, the second component of this claim is also satisfied.

The retaliation claims fail because the allegations do not suggest that Plaintiff's grievance(s) were a motivating factor in the retaliatory action.  *Greene v. Doruff*, 660 F.3d 975, 979 (7th Cir. 2011).  Plaintiff was denied access to his personal property *before* he filed grievance(s) to complain about this deprivation.  That is, after all, *why* he filed the grievance(s).  In response, Defendant Doe met with Plaintiff on November 11th and explained the reason for denying access to each item.  Plaintiff summarizes this discussion in the Complaint.  He does not allege that the items were incorrectly withheld.  Despite referring to Plaintiff as a "pain in the ass," Defendant Doe immediately responded to Plaintiff's request for his property and his legal boxes by having an inmate worker locate this property.  Defendant Doe then gave Plaintiff an opportunity to sort through his legal boxes and take selected materials to his cell.  In light of these allegations, the Court cannot find that the protected activity (*i.e.*, filing grievance(s) on or around October 29, 2014) resulted in the denial of access to Plaintiff's personal property.

That deprivation predated the grievance(s).  As such, the retaliation claim in **Count 1** shall be dismissed without prejudice against Defendant Doe.

The retaliation claim against Defendant Westerman does not survive preliminary review because the Complaint discloses no actual acts of retaliation that are attributable to this defendant.  To support any claim under § 1983 against this defendant, Plaintiff must demonstrate that Defendant Westerman was personally involved in a constitutional violation.  *Harris v. Greer*, 750 F.2d 617, 618 (7th Cir. 1984).  *See also Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted) (To "be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation.").  While it may be true that Defendant Westerman threatened to make Plaintiff's life a "living hell" on January 24, 2015, the Complaint identifies no affirmative steps taken by this defendant to follow through on this threat.  Similarly, Defendant Westerman's threat to withhold property after it was already withheld from Plaintiff supports no claim against this defendant.  Plaintiff must establish a causal connection between a threat of retaliation and the subsequent retaliatory act.  *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *see also Bridges*, 557 F.3d at 551 (the mere threat of retaliation states no claim for relief).  Threats, alone, do not suffice to state a claim. Accordingly, the retaliation claim in **Count 2** against Defendant Westerman shall be dismissed without prejudice.

Finally, the retaliation claim against Defendant Mullholland must also be dismissed for the same reason.  Plaintiff fails to establish a causal connection between the protected conduct (*i.e.*, filing grievance(s) on or around October 29, 2014) and retaliatory action of Defendant Mullholland on June 4, 2015.  More than six months passed between Plaintiff's protected

conduct and Defendant Mullholland's alleged use of excessive force.[5]  Although Plaintiff alleges that Defendant Mullholland targeted him for mistreatment because of the grievances, the allegations suggest no such thing.  Defendant Mullholland said nothing about the grievances.  Rather, he accused Plaintiff of messing with "his family" (Doc. 1, p. 17).  Plaintiff speculates that Defendants Westerman and Mullholland are related.  However, the Complaint draws no connection between the grievance(s) Plaintiff filed to complain about missing property and the alleged Eighth Amendment violation that occurred on June 4, 2015.  The connection between the protected conduct and the retaliatory action of Defendant Mullholland is too tenuous to support a claim against this defendant.  Accordingly, the retaliation claim in **Count 3** against Defendant Mullholland shall be dismissed without prejudice.

### B.     Denial of Property Without Due Process (Counts 1, 2 and 3)

The Complaint supports no independent Fourteenth Amendment claim against Defendants Doe (Count 1), Westerman (Count 2) or Mullholland (Count 3) based on the denial of access to Plaintiff's personal property.  To state a claim under the Fourteenth Amendment Due Process Clause, Plaintiff must establish a deprivation of liberty or property without due process of law and if the state provides an adequate remedy, Plaintiff has no civil rights claim.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999) (citations omitted) ("A prisoner has adequate process where an adequate post-deprivation remedy is available to redress unauthorized

---

[5] There is no indication that Defendant Mullholland searched Plaintiff's cell and confiscated his legal papers. Therefore, the deprivation at issue in Count 3 is more appropriately characterized as the deprivation of Plaintiff's right to be free from cruel and unusual punishment and not the denial of access to his property.

confiscations of property."). Accordingly, this claim shall be dismissed without prejudice to Plaintiff separately pursuing relief in the Illinois Court of Claims.

## C.      Denial of Access to Courts (Counts 1, 2 and 3)

The Complaint does not support a no access-to-courts claim against the defendants. To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

In this case, Plaintiff generally alleges that his legal boxes were not sealed properly. When he inventoried the boxes more than a year later, he discovered that certain items were missing. In addition, several affidavits and Complaints were allegedly taken or destroyed during the cell shakedown that occurred on June 4, 2015. However, Plaintiff does not allege that any particular defendant was personally involved in the loss of this property, defeating any separate access-to-courts claim against them. *Harris*, 750 F.2d at 618. Further, the Complaint fails to identify what consequences, if any, befell Plaintiff because he lacked access to these materials. *See, e.g.*, *Johnson v. Barczak*, 338 F.3d 771, 773 (7th Cir. 2003) (internal questions and citation omitted) (no access-to-courts claim stated where Plaintiff failed to mention any action that resulted "in actual substantial prejudice to specific litigation"). The court access claim is therefore subject to dismissal without prejudice against the defendants.

D.     **Supervisory Liability (Count 4)**

The Complaint articulates no claim against Defendant Butler for failing to intervene and stop the alleged retaliation of Defendants Doe, Westerman and Mullholland.   As previously stated, the underlying retaliation and property claim against these defendants fails.   So, too, must any claim arising from the warden's role as their supervisor.   There is no concept of supervisory liability under § 1983.   *See, Harris*, 750 F.2d at 618 (citations omitted).   Accordingly, **Count 4** is dismissed without prejudice against Defendant Butler and with prejudice against all other defendants.   Plaintiff's request for injunctive relief, which pertains to the return of his personal property, is also subject to denial; it is therefore not necessary to name the warden, in his or her official capacity, for purposes of carrying out any injunctive relief that is ordered.

Moreover, no independent claim arises against Defendant Butler for mishandling Plaintiff's grievances.   Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se.   As such, the alleged mishandling or denial of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."   *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).   *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n. 3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).

E.     **Civil Conspiracy (Count 5)**

The civil conspiracy claim against the defendants also fails.   Plaintiff's vague assertion that the defendants conspired to cover up their acts of retaliation against him is insufficient to support a conspiracy claim.   Allegations of a conspiracy have routinely been held to a higher pleading standard than other allegations.   *See Geinosky v. City of Chicago*, 675 F.3d 743, 740 (7th Cir. 2012) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).   Under

*Twombly*, the Complaint must allege a "plausible account of a conspiracy."   *Id.*   The mere suspicion of a conspiracy will not suffice.   Likewise, conclusory allegations of a conspiracy give rise to no claim.

Further, conspiracy is also not an independent basis of liability in § 1983 actions.   *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).   "There is no constitutional violation in conspiring to cover-up an action which does not itself violate the Constitution."   *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996). In light of the fact that no retaliation, property, or access-to-courts claim is stated against the defendants in the Complaint, Plaintiff's claim of a conspiracy to cover up these acts fails. Further, no defendants, other than Defendant Mullholland, are mentioned in connection with the excessive force claim.   In light of these considerations, the conspiracy claim in **Count 5** shall be dismissed without prejudice.

## F.      Replevin (Count 6)

Plaintiff's claim of replevin under 735 ILCS § 5/19-101 shall also be dismissed without prejudice to Plaintiff pursuing relief in state court.   The Court declines to exercise supplemental jurisdiction over this claim under 28 U.S.C. § 1367 because it is unrelated to the excessive force claim against Defendant Mullholland that shall be allowed to proceed in this action.   *Ho-Chunk Nation,* 512 F.3d at 936 (court may exercise supplemental jurisdiction under § 1367(a) only if stated claims "derive from a common nucleus of operative fact" with the federal claims).   Thus, without addressing the merits of this claim, the Court deems it appropriate to dismiss **Count 6** without prejudice to Plaintiff separately pursuing relief in Illinois state court.

**Pending Motion**

Plaintiff's Motion for Appointment of Counsel (Doc. 4) shall be **REFERRED** to a United States Magistrate Judge for handling.

**Disposition**

**IT IS HEREBY ORDERED** that, because they fail to state a claim upon which relief may be granted, **COUNTS 1, 2,** and **3 (except the Eighth Amendment excessive force claim against Defendant Mullholland)** are **DISMISSED** without prejudice against Defendants **DOE, WESTERMAN,** and **MULLHOLLAND**, respectively; **COUNT 4** is **DISMISSED** without prejudice against Defendant **BUTLER** and with prejudice against all other defendants; and **COUNT 5** is **DISMISSED** without prejudice against all of the defendants.  Finally, **COUNT 6** is **DISMISSED** without prejudice to Plaintiff pursuing relief in Illinois state court, this Court having declined to exercise supplemental jurisdiction of the claim pursuant to 28 U.S.C. § 1367.

**IT IS ALSO ORDERED** that Plaintiff's request for injunctive relief is **DENIED** because it pertains only to the return of personal property and all such claims have been dismissed.

**IT IS FURTHER ORDERED** that the Eighth Amendment excessive force claim in **COUNT 3**, the Illinois battery claim in **COUNT 7** and the Illinois intentional infliction of emotional distress claim in **COUNT 8** against Defendant **MULLHOLLAND** are subject to further review.  With regard to **COUNTS 3, 7,** and **8,** the Clerk of Court shall prepare for Defendant **MULLHOLLAND**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1) and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and

return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Appointment of Counsel (Doc. 4) pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.* Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and

28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 11, 2016**

s/ STACI M. YANDLE
United States District Judge